**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    Chapter 7

BENJAMIN H. YORMAK,                      Case No.: 9:15-bk-04241-FMD

               Debtor.                               Judge Caryl E. Delano

_____/

**CREDITOR STEVEN R. YORMAK MOTION FOR LEAVE AND APPEAL**
**AND PETITION FOR A WRIT OF MANDAMUS OF BANKRUPTCY COURT**
**DENIAL OF CREDITOR MOTION TO DISQUALIFY JUDGE C. DELANO**
**AND MOTION TO STAY PROCEEDINGS (Doc. No. 480, 482, 467)**

Creditor STEVEN R. YORMAK ("Creditor") brings this motion for leave and to appeal the Bankruptcy Court Order entered September 7, 2018 (Doc. No. 480) denying Creditor's *'Motion For Recusal or Disqualification of Presiding Judge Caryl. E. Delano* (Doc. No. 467*)* based on the judge lack of impartiality, bias and pervasive prejudice pursuant to U.S.C. 28 s. 455(a) and s. 455(b)(1) respectively, said appeal brought pursuant to 28 U.S.C. s. 158(a)(3) and Federal Rules of Bankruptcy Procedure, Rule 8004, and All Writs Act, 28 U.S.C. s. 1651(a); and Motion to Stay proceedings.

Creditor appeals the bankruptcy court order pursuant to 28 U.S.C. s. 1291 and case precedent of *Cohen v. Beneficial Industry Loan Corp.*, 337 U.S. 541 (1949) ; 69 S Ct. 1221, 93 L.Ed. 1528 and *Tomlinson v. Florida Iron & Metal Co.*, 291 F. 2d 333 (5th Cir. 1961) which support that a denial of a motion for recusal is immediately appealable. Court review of the bankruptcy order is based on abuse of discretion. *Draper v. Reynolds*, 369 F.3d 1270, 1274 (11th Cir. 2004).

In functioning as an appellate court, the Court reviews de novo the legal

1

conclusions of a bankruptcy court but must accept a bankruptcy court's factual findings unless they are clearly erroneous. See *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993).

The question is whether Judge Delano has demonstrated a lack of impartiality, bias and perverse prejudice to disqualify her from presiding over these proceedings. *United States v. Columbia Broadcasting System, Inc.,  497 F.2d 107, 109 (5ᵗʰ Cir. 1974)* : " Any question of a judge's impartiality threatens the purity of the judicial process and its institutions."  It is well established that a judge may be disqualified for perverse prejudice arising from her conduct and orders within a proceeding: *Loranger v. Stierheim*, 10 F.3d 776, 780-1 (11ᵗʰ Cir. 1994):

> "However, the fact that a judge's remarks or rulings occur in a judicial context does not necessarily insulate them from scrutiny.
>
> …we have required recusal when "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." *Davis v. Board of Sch. Comm'rs*, 517 F.2d 1044, 1052 (5th Cir.1975) cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976)."

The accepted test is whether an objective disinterested lay observer fully informed of the facts underlying the grounds on which recusal is sought would entertain a significant doubt about the judge's impartiality. *United States v. Patti*, 337 F.3d 1317, 1321 (11ᵗʰ Cir. 2003); Gwynn v. Walker (In re Walker), 532 F.3d 1304, 1308 (11ᵗʰ Cir. 2008).

 In the alternative Creditor petitions the court for mandamus to order Judge Delano disqualified or recuse herself from further proceedings in the event the appeal is not granted, the mandamus being the only remedy available to the Creditor. *Kerr v. United States District Court*, 426 U.S. 344, 402 (1976).

**THE FACTS AND PROCEEDINGS:**

The Creditor, a consultant, brought action in District Court ("DC") against the debtor, a lawyer, for breach of contract arising from consulting agreements dated August 18, 2012.  The Creditor consultant performed services pursuant to the agreements and is owed $660,000 pursuant to Agreement I plus $420,000 pursuant to Agreement II.  A further contingent amount is owed yet to be determined pursuant to Agreement III.  The Creditor is a 90%+ unsecured stakeholder in the bankrupt estate.  The debtor assets exceed $1.8 million.  This is a two-party dispute.  The debtor has not filed any objection to any other claim of any other creditor.

The debtor vigorously defended the preceding identical action between the identical parties in DC including bringing a motion to dismiss the Creditor Plaintiff breach of contract action on the basis that the consulting agreements were unlawful and therefore unenforceable as a matter of law. The DC specifically ruled against this position and dismissed the debtor defendant motion. At no time during the DC proceeding or the present bankruptcy has the debtor denied the authenticity of the agreement he voluntarily signed. His defenses have all been regarding supposed enforceability pursuant to multiple defenses.

Upon the termination of discovery in the DC action the debtor defendant realizing he was going to be confronted with Creditor motions for summary judgment and/or subsequent scheduled trial decided he would "try his luck" in another court and filed for c. 13 bankruptcy protection despite the fact he was not insolvent and was merely seeking to avoid one Creditor. The Creditor thereafter filed the identical claim in bankruptcy court (Claim 4-1).  The Creditor was successful in dismissing all of the debtor Objections

originally filed in the bankruptcy proceeding through motion for summary judgment.  The debtor subsequently failed to obtain leave to file further objections in the bankruptcy proceeding (Doc. No 101), except one objection being allegations of unlicensed practice of law (UPL) which the court re-structured on its own volition. The court denied the Creditor motion(s) to dismiss the UPL objection at the time.

Subsequently the Creditor brought his motion to stay and/or dismiss the debtor UPL objection on the basis that only the Florida Supreme Court has exclusive jurisdiction to address UPL. The Florida Supreme Court in 2010 established a process pursuant to 'Goldberg v. Merrill Lynch' (35 So.3d 905(2010) whereby a party must obtain a Supreme Court UPL ruling through the duly authorized Florida Bar failing which his pleading will either be stayed or dismissed.  Debtor never obtained such a ruling. Notwithstanding this precedent the bankruptcy court dismissed the Creditor's motion to stay the debtor objection.  Since the 'Goldberg' decision no court, State of Federal, has ignored the well-established case precedent, until this Court order. An appeal is pending with the Eleventh Circuit presently.

The Creditor's claim is the only debt the debtor has contested, the other debts being in the nature of normal business and personal expense, such as credit cards, taxes and the like.

Having filed under c. 13 and facing trustee opposition to the debtor assertion that there were no funds to pay creditors debtor decided to convert to c. 7 proceedings, not for financial reasons but merely because as he stated to the Trustee in his Section 341 Creditors' Meeting, it was in his "interest" to do so.

## QUESTION FOR COURT:

Whether the Bankruptcy Court erred in denying Creditor *'Motion to Recuse or Disqualify Judge Delano'* on the basis of its lack of impartiality, bias and prejudice.

## RELIEF REQUESTED

Creditor hereby requests Leave for Appeal and Appeal be GRANTED and order Judge Delano be disqualified as presiding judge, or alternatively that the court GRANT the writ of mandamus to order Judge Delano disqualified.

Creditor also requests the proceedings be stayed until the appeal proceedings are exhausted.

## REASONS LEAVE SHOULD BE GRANTED:

**THE LAW:**

### APPEAL OF INTERLOCUTORY ORDER

The present appeal is based on the law regarding leave for an interlocutory appeal pursuant to 28 U.S.C. 1291 and the *Cohen* case, Ib. as well as *Tomlinson* case, Ib which states that a denial of a motion of recusement is considered immediately ppealable.

> The criteria include factors such as maintaining "public confidence in the judiciary as a "public treasure" that is "vitally necessary ingredient of any successful effort to protect liberty, and indeed, the rule of law itself." Justice Breyer, dissent in *Bush v. Gore*, 531 U.S. 98, 157-8 (2000).

There cannot be a "semblance of impropriety. See *In re Corrugated Container Anti-Trust Litig.,* 614 F.2d 958, 961 n. 4 (5th Cir. 1980); *Emle Industry, Inc., v. Patentex, Inc*., 478 F.2d 562, 575 (2d Cir. 1973).

Not addressing the recusal issue at this juncture of the bankruptcy proceedings would run the risk and substantial likelihood of having to return the entire matter for repeat pre-trial and trial resulting in duplication of process. See *Cohen, Ib. Bank of Columbia v.*

*Sweeney,* 1 Pet. 567, 569, 7 L.Ed. 265; *United States v. River Rouge Improvement Co*., 269 U.S. 411, 414, 46 S.Ct. 144, 145, 70 L.Ed. 339; *Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 The usual reason for not granting leave is precisely the reason in this case to grant leave being economy of judicial resources . *United States v. MacDonald*, 435 U.S. 850(1978); *Praden Steiman  ex. rel.  Prado v. Bush*, 221 F. 3d 1267 (11th Circ. 2000); *lobodinsky v. Salkin (In re Saber)* 264 F. 3d 1317 (11th Cir. 2001).

The 11th Circuit has affirmed this approach  in *Atlantic Federal Savings & Loan Association v. Blythe Eastman Paine Webber*, 890 F.2d 371:

> "In interpreting the final judgment rule expressed in section 1291, however, the Supreme Court has demonstrated that "the statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation." *In re Martin Bros. Toolmakers, Inc*., 796 F.2d 1435, 1437 (11th Cir.1986). The Court has fashioned three types of exceptions to the final judgment rule: the collateral order doctrine, the doctrine of practical finality, and the exception for intermediate resolution of issues fundamental to the merits of the case."

Alternatively, there is the *Gillespie* line of case law derived from that U.S. Supreme Court decision (*Gillespie v. U.S. Steel Corp*. 379 U.S. 148, 153-4, 85 S.Ct. 308, 311-12, 13 L. Ed2d199 (1964). The Court in that case in permitting appellate review of an interlocutory order "provides that even an order of marginal finality should be accorded immediate review if the question presented is fundamental to further conduct of the case."

The *Gillespie* court further states: "The requirement of finality is to be given a practical, rather than a technical construction, and does not necessarily mean that an order, to be appealable, must be the last possible one to be made in a case. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U. S. 541, followed. P. 379 U. S. 152.

The Court summarizes the proper approach as follows:

> "Under § 1291, an appeal may be taken from any "final" order of a district court. But, as this Court often has pointed out, a decision "final" within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. *Cohen*

*v. Beneficial Industrial Loan Corp.,* 337 U. S. 541, 337 U. S. 545. And our cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality.

Because of this difficulty, this Court has held that the requirement of finality is to be given a "practical, rather than a technical, construction." *Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 337 U. S. 546. *See also Brown Shoe Co. v. United States,* 370 U. S. 294, 370 U. S. 306; *Bronson v. Railroad Co.,* 2 Black 524, 67 U. S. 531; *Forgay v. Conrad,* 6 How. 201, 47 U. S. 203; *Dickinson v. Petroleum Conversion Corp.,* 338 U. S. 507, 338 U. S. 511, pointed out that, in deciding the question of finality, the most important competing considerations are "the inconvenience and costs (Page 379 U. S. 153) of piecemeal review, on the one hand, and the danger of denying justice by delay, on the other."

The 11th Circuit followed this precedent in the case of *In re F.D.R. Hickory House, Inc.,* 60 F.3d 724,727(11th Cir. 1995) discussing the more flexible standard of finality in appeals of bankruptcy orders.  That court pointed out that they would review "even an order of marginal finality…if the question presented is fundamental to further the conduct of the case.", quoting *Atlantic Fed. Sav. & Loan Ass'n v. Blithe Eastman Paine Webber, Inc.,* 890 F.2d 371,376 (11th Cir. 1989).

An appellate court will review a recusal denial *de novo* the legal conclusions of a bankruptcy court to determine if there has been an abuse of discretion. *In re JLJ,* Ib.; *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999).

Given this court's demonstrable documented biased decisions, acting as advocate and general approach it is clear she is in violation of s. 455 factors. It has been generally accepted that court decisions within proceedings based on the evidence on record or some other supportable events in the course of proceedings will not support a recusal motion with the exception being in the case of pervasive prejudice, as in the instant case. This court has issued egregious offending court orders prohibiting all Creditor discovery and barred

the Creditor ability to prepare his case by preventing him from interviewing the most relevant witnesses being debtor clients.  There is nothing in the record by way of evidence or otherwise to support these draconian orders. There were no references by the court nor was there "facts introduced or events occurring in the course of proceedings" in the instant case to justify this court's "opinions' or rulings. This case clearly falls within the exception referred to in case law. See *Liteky v. United States* , 510 U.S. 540, 555 (1994); *Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1329 (11th Cir.2002)*; *United States v. Meester*, 762 F.2d 867, 884 (11th Cir. 1985); *Gwynn v. Walker (In re Walker)* , 532 F.3d 1304, at 1311 (11th Cir. 2015).

This court's bias in favor of the debtor was apparent in its decision to choose, after issuing the AEO bench order, to rely upon debtor counsel representations of "facts" in order to justify her extraordinary order. She did not rely upon proper or for that matter <u>any</u> evidence. See *Leon Shaffer Golnick Adeertising, Inc. v. Cedar*, 423 So. 2d 1015 (Fla. 4th DCA 1982); *Arnold v Arnold*, 889 So. 2d 215 (Fla. 2d DCA 2004); *H.K. Development m LLC v.  Greer*, 32 So.3d 178 n. 4 (Fla. 1st DCA 2010); *Smith v. Smith*, 64 So. 3d 169 (Fla. 4th DCA 2011); *Brown v. School Bd. Of Palm Beach County*, 855 So. 2d 1267 (Fla. 4th DCA 2003); *INS. V. Phinpathya* , 464 U.S. 183, 188089 n.6 (1984) and *Matter of Ramirez-Sanchez*, 17 I&N Dec 503 (BIA 1980): <u>Statements of counsel are not evidence</u>. Also see *Matter of S-M-*, 22 I&N Dec. 49, 51 (BIA 1998): "statements in a brief, motion or appeal are not evidence and thus not entitled to any evidentiary weight.  Further this court never required or even asked debtor to provide any proof or any specifics whatsoever of any contact the Creditor supposedly had with debtor clients which was the supposed second "grounds" for the AEO order.

As stated in *Loranger v.  Stierheim*, 10 F.3d 776, 780-1 (11th Cir. 1994):

"…however, we think there is an exception where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." D*avis v. Board of Sch. Comm'r*s, 517 F.2d 1044, 1052 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976) confirming the principle that there may be prejudice to such a degree within a case and presiding judge rulings that recusal is appropriate and necessary.

Federal law requires that a Judge recuse herself when there is an appearance of impropriety. *U.S. v. Patti,* 337 F.3d 1317, 1321 (11th Cir. 2003) . The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible. The judge need not be aware of the disqualifying circumstance, the "mere appearance of impropriety" to an objective observer is enough to trigger disqualification under this section. See  *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988) ;  *Parker v. Connors Steel Co.*,855 F.2d 1510 1524 (11th Cir. 1988) ("We conclude that all of these facts taken together raise the appearance of impropriety and may cause one to reasonably question Judge Lynne's impartiality.). Inherent in s. 445's requirement that a judge disqualify himself if his impartiality might reasonably be questioned is the principle that our legal system "must satisfy the appearance of justice."  *Offutt v. United States*, 348 U.S. 11, 14 (1954) ("justice must satisfy the appearance of justice"). Title 28 U.S.C. § 455 is intended "to promote public confidence in the impartiality of the courts by eliminating even the appearance of impropriety.

" *United States v. Alabama, 828 F.2d 1532*, 1540 (11th Cir. 1987). "Judiciary derives its legitimacy from its appearance of impartiality ": Amanda Frost, *Keeping Up Appearances: A Process-Oriented Approach to Judicial Recusal,* 53 U.Kan.L.Rev. 531, 532 (2005).

Courts will order disqualification if a review reveals such a high degree of favoritism or antagonism as to make fair judgment impossible: *U.S. v. Kelly*, Ib. *Liteky v. United States, 510 U.S. 540*, 548, 555, 114 S. Ct. 1147, 1157 (1994)("what matters is not the reality of bias or prejudice but its appearance") *; Bolin v. Story, 225 F.3d 1234*, 1239 (11th Cir. 2000) .

Further this court continues to act as an advocate so that the Creditor is facing not just the debtor lawyer and his bankruptcy counsel but a court who regularly makes suggestions before counsel does which counsel then meekly says "I was just going to say that", or "that was my understanding of the law too".  This is a regular and ongoing occurrence in these proceedings and amounts to this court crossing the line over to an advocate which is not permitted.  See *Knapp v Kinsey*, 232 F.2d 458 (6th Cir. 1956): { the judge} "figuratively speaking, stepped down from the bench to assume the role of advocate for the plaintiff." The prejudicial effect to appellants' rights required a reversal of the judgment. *Appeal of United States Securities and Exchange Commission*,  6 Cir., 226 F.2d 501, 519, 520; *Berger v. United States*,  255 U.S. 22, 41 S.Ct. 230; *Crowe v. Di Manno*, supra, 1 Cir., 225 F.2d 652, 659; *Whitaker v. McLean*,  73 App. D.C. 259, 118 F.2d 596; *N. L. R. B. v. Phelps*, 5 Cir., 136  F.2d 562.

This judge in open court on May 23, 2018 (Doc. No 444-transcript) stepped into this role in discussing the Creditor's pending Motion to Dismiss the Debtor Bankruptcy

Pursuant to s. 105(a) The judge not having had the opportunity to review the motion in any detail the motion filed only the day prior to the hearing addressed and advised the debtor counsel at 71:16-17:

> THE COURT: "Mr Hollander, you know what to do when you think someone as filed a spurious motion."

Without having read the Creditor's motion to dismiss the bankruptcy proceeding, having heard debtor's opposition in the matter on May 23, 2018 and having refused to permit Creditor to respond the court offered unsolicited at 73:9-25 and 74:1-8 to the Creditor :

> "THE COURT:  I think you have an uphill battle on your 422. I don't think it's likely that I'm going to dismiss the case. I think Mr. Hollander's arguments are well-founded. But since this wasn't set for hearing today and you weren't prepared for a full-blown hearing on this today, I'm going to go ahead and set it for hearing; okay?  But you've go an uphill battle on it: okay?  Not the least of which is, Mr. Tardif [trustee]is never going to agree that the case should be dismissed, I can—
>
> --------------------
>
> THE COURT: I can guarantee you that. Okay? In any event—
>
> MR. YORMAK: That's not decisive of the Court's view, of course.
>
> THE COURT: No, it's not but Mr. Tardif will tell me reasons why the case shouldn't be dismissed.  I brought up the 707 issue. I think that's dispositive I brought up the fact that the case was converted just a year-and-a-half ago now, I think, two years.
>
> MR. YORMAK: I'm basing it on Section 105(a) which abuse can be brought at any time.
>
> THE COURT: I don't think that's what 105(a) says.
>
> ------------------
>
> MR. YORMAK:  Yes, it does. "

Impartiality implicates freedom from bias and prejudice. "Bias" implies a

mental leaning in favor or against someone. "Prejudice" is a preconceived unreasonable judgment whenever formed which is not based on the facts nor the law:  Donald Nugent, "*Judicial Bias",* 42 Clev.St.L.Rev. 1,2 n.5 (1994).

Pervasive bias and prejudice arising from a judge's rulings in a case may form the basis of recusal.  *Gwynn v. Walker (In re Walker)* ,532 F.3d 1304, 1311 (11th Cir. 2008). A judge's decisions will be an abuse of the court discretion if those decisions are unreasonable and arbitrary.

It has been uniformly held by the courts that statutory  disqualification statutes, s. 455(a) , and constitutional  'due process' requirements  apply in bankruptcy cases. See *Wright v. Union Central Life Ins. Co*., 304 U.S. 502, 518, 58 S.Ct. 1025, 82 L.Ed. 1490 , reh'g denied, 305 U.S. 668 , 59 S.Ct. 56, 83 L.Ed. 433 (1938)  ; *In re Motors Liquidation Co*., 529 B.R. 510, 550 (Bankr. S.D.N.Y. 2015) citing *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1950).

The Eleventh Circuit has instructed that any doubts about a judge's impartiality must be resolved in favor of recusal : *Patti*, 337 F.3d at 1321 (citing *United States v. Kelly* , 888 F.2d 732 745 (11th Cir. 1989); *Foster v. Sec'y, DOC (M.D.Fla. 2015).*   It has been stated on numerous occasions that when a judge harbors any doubts concerning whether her disqualification is required she should resolve the doubt in favor of disqualification. See *United States v. Alabama*, 828 F.2d 1532, 1540 (11th Cir 1987)(per curiam), cert. denied sub nom., __U.S.__, 108 S.Ct. 2857, 101 L.Ed2d 894 (1988);  *Hall v. Small Business Administration*, 695 F.2d 175, 178-9 (5th Cir. 1983).

Another way to approach recusal and whether to disqualify a judge is to look at her 'outward manifestations' on an objective basis of what reasonably be construed as bias by a disinterested reasonable person. *U.S. v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).

<u>CONSTITUTIONAL, FIFTH AND FOURTEENTH AMENDMENTS</u>

Constitutional fair trial requirement stands separate and apart from federal and judicial disqualification standards which may require recusal in instances where the statutes are not technically applicable. See *United States v. Scuito*, 531 F.2d 842, 845 (7th Cir. 1976); *United States v. Conforte*, 457 F.Supp. 641, 659(D.Nev. 1978).

Due process requirements include the right of a party (Creditor) to have a **<u>meaningful</u>** opportunity to address the accusations made against him as well as other issues particularly when statements made by the opposing party are not evidence and mere unsworn statements *(In re:Guidry) James v. Guidry, BAP No. CC-14-1531-TaKuKi*, Ninth Circuit made particularly egregious when a felony is alleged. A court which prohibits discovery without any support in fact or law and prohibits a party from preparing the case he has to meet clearly violates the due process clauses in the Constitution as in the instant case. See *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); *Crane v. Kentucky*, 476 U.S. 683, 690-1 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984).

A party must be able to address accusations made against him and be afforded a full "opportunity to meet it." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171-2 (1951) Frankfurter, J.    A total prohibition against a party discovery rights preventing his ability to prepare his case including a ban on contacting the most relevant and knowledgeable witnesses (being the debtor clients who will know about whether there was any UPL at the relevant times) is like "tying a party's hands behind his back" which

will all but assure a certain outcome against the Creditor. This clearly violates Creditor's federal statutory rights of discovery and constitutional rights to 'due process' pursuant to the Fifth and Fourteenth Amendment. This is analogous to a prosecutor refusing to provide disclosure to a criminal defendant prior to trial a circumstance which all courts have uniformly held as unconstitutional and misconduct.

The law is well-established that a fundamental tenet of due process is a fair and impartial tribunal. *Marshall v. Jerrico*, Inc. 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) the Supreme Court stating:

> "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process.... The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law.... At the same time, it preserves both the appearance and reality of fairness, "generating the feeling, so important to a popular government, that justice has been done," ... by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him."

446 U.S. at 242, 100 S.Ct. at 1613 (citations omitted)."

It has been held by the U.S. Supreme Court that denial of 'due process' in violation of the Fifth and Fourteenth Amendment includes the 'appearance of bias' (J. Ginsburg, Stevens-*Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009), 129 S.Ct. 2252 (2009).

In that case the Supreme Court recognized that disqualification was appropriate for an "unconstitutional 'potential for bias'". *Id*. 2262.  Recusal was required when "the probability of actual bias of the judge or decision maker is *too high to be constitutionally tolerable*. "(Court emphasis) *Id*. At 2259.  That court considered the presiding judge own

motivations and self-analysis as to his own impartiality to be irrelevant instead looking to

the "serious risk "of bias based on objective and reasonable perceptions. *Id*. 2263.

*Caperton*'s "probability of actual bias" standard is clearly the law now and that

recusal and disqualifications are not limited to any particular factual context. See Frey &

Berger, *A Solution in Search of a Problem: The Disconnect Between the Outcome of*

*Caperton and the Circumstances of Justice Benjamin's Election*, 60 Syracuse L.Rev. 279

at 288-89

Since *Caperton*, courts have continued to emphasize the importance of

implementing 'due process' generally in the context of recusal motions. *Bauer v. Shepard*

, 634 F. Supp. 2d 912 , 943 (N.D. Ind. 2009).  Complete deprivation and evisceration of all

discovery and investigative rights depriving a party the ability to defend against a criminal

accusation in any setting qualifies as "extreme facts" as contemplated in the *Caperton* case

and its judicial offspring.


A basic requirement under the Fourteenth Amendment is for a fair trial in a fair

tribunal in a fair process. See *In re Murchison,* 349 U.S. 133, 136 (1955).  A core element

of due process is that the decisionmaker must be scrupulously neutral-neither biased in

favor of one side or the other. *Tunney v. Ohio*, 273 U.S. 510, 532 (1927); *Marshall v.*

*Jerrico,* Inc., 446 U.S. 238, 242-3 (1980).

  "Once facts have been set forth that create a reasonable inference of a 'bent of
mind' that will prevent a judge from dealing fairly with the party seeking recusal,
it is incumbent upon the trial judge to recuse herself."  See *People v. Botham*, 629
P.2d 589, 595 (Colo. 1981).

Courts cannot deprive a party of his constitutionally protected right to confront

and examine his accusers: J*enkins v. McKeithen*, 395 U.S. 411, 28-9 (1969); *Nevels v.*

*Hanlon*, 656 F. 2d 373, 376 (8th Cir. 1981), U.S. Const., 6th and 14th Amend.; *Peterson v. Peterson*, 374 N.J. Super. 116, 124 (App. Div. 2005). By not permitting any contact with debtor clients given the UPL accusations against Creditor this Judge is denying Creditor of this constitutional right.

It has long been recognized that a deprivation or limitation of discovery rights can be a violation of 'due process' by impeding defenses and party interests: *In re: Dependency of V.R.R.,* 134 Wash. App. 573, 586, 141 P.3d 85, 91 (Wash. Ct. App. 2006). It is indisputable that Creditor's fundamental due process rights have been trampled by Judge's discovery orders: *A.B. v. Y.Z.,* 184 N.J. 599 604 (2005).

It is a further error for a judge not to provide adequate or any reasons for critical procedural orders, ever more heightened given the draconian nature of the procedural AEO and other orders (client witness prohibition).

> "We emphasize...that it is essential that...all rulings affecting the procedural rights of parties be shown on the docket and contained in the record to afford complete review by this court. Parties' procedural rights cannot be sacrificed in the interest of moving busy dockets." *Brown v. Crawford County*, 960 F.2 1002 (11th Cir. 1992)

Reference is made to the federal judicial codes which also mitigate in favor of a federal judge disqualifying herself in a proceeding in which the judge's impartiality might reasonably be questioned: *Code of Judical Conduct for United States Judges*, Canon 3(C)(1), *U.S. v. Microsoft Corp*. 253 F. 3d 34, 113 (D.C. Circuit 2001).

### WRIT OF MANDAMUS

The Petition for Writ of Mandamus is requested pursuant to All Writs Act, 28 U.S.C. s. 1651(a) which permits federal courts to "issue all writs necessary or appropriate

16

in aid of their respective jurisdictions and agreeable to the usages and principles of law."

A writ of mandamus may issue provided there are no other remedies available to the party and the requested relief is clear and indisputable. *Mallard v. United States District Court*, 490 U.S. 296, 309 (1989); *In re Am Ready Mix, Inc*., 14 F.3d 1497, 1499 (10th Cir. 1994) citing *Will v. United States*, 389 U.S. 90, 96 (1967).

There is some precedent that supports the view that interlocutory appeals of denial for motion for recusal is not subject to interlocutory review pursuant to section 158 leaving mandamus as the only available remedy.  *United States v. Gregory*, 656 F.2d 1132, 1136 (5th Cir. Unit B September 1981); *In re Corrugated Container Antitrust Litig*., 614 F. 2d 958, 960-961(5th Cir., cert. denied, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed. 114 (1980).

### The Factual Record Demonstrates the presiding judge pervasive bias and prejudice against Creditor and favoritism toward debtor and/or lack of impartiality in violation of statute and the Constitution

(The 'Sua Sponte' Attorney Eyes Only' (AEO) order relates to Docs. No. 95, 180, 186, 217 ,**231**(Exh1), 273, 275 , 343, **347**, 354, 356 ,**362**, 368, 386, 390)

The extraordinary 'sua sponte' court order by the Judge was issued during open hearing November 10/2016 (Doc. No. 186 Transcript; Doc. No. 180) in the course of debtor motion for protective order .  At no time did debtor counsel EVER request such an astonishing order . This came "out of nowhere" in response to debtor counsel inquiry (16:19-25):

> "MR. HOLLANDER:  The question is going to be: If I need to have some
> protection to these clients as far as confidentiality is concerned -- order?
> THE COURT:  Attorneys' eyes only.
> MR. HOLLANDER:  -- can we have it as part of the

THE COURT: Attorneys' eyes only"

When the Judge sought support from debtor counsel to justify her already pronounced 'sua sponte' AEO order debtor was only able to offer unsupported non-evidentiary accusations which Creditor counsel vehemently denied at the time which was in fact later debunked by Creditor submissions. Creditor counsel at the time immediately objected saying there was no basis for such an unrequested extraordinary order.   For unknown reasons the Judge refused to discuss it (Transcript –Doc. No. 186- November 10/2016 hearing at 18:4-5):

THE COURT: Today my ruling is attorneys' eyes only.

Counsel of record's eyes only. Okay?

Debtor counsel continued in that hearing to misrepresent the facts giving "evidence" from his counsel table claiming the Creditor had contacted debtor clients previously which allegation was entirely false, and had no evidentiary support. (18:24-25; 19:1-3). Remarkably the Judge maintained the draconian AEO order which had the effect of removing the Creditor from his own litigation.  Judge indicated she would review the AEO order at the next hearing in December 2016 and review in camera if necessary, none of which occurred despite Creditor counsel again raising this issue at the December 15, 2016 hearing (Transcript Doc. No. 187).

The Judge never gave any reason or grounds to issue this most extraordinary discovery prohibitory order which by reference to case law is only invoked to protect state secrets, trade secrets or highly confidential information, the latter usually addressed through a confidentiality order which this court later refused (Doc. No. 217-2).

Creditor counsel conferred with the Creditor and indicated that he felt no competent attorney would be able to properly represent Creditor under the circumstances and the inexplicable refusal by the Judge to rescind this unwarranted order.  Counsel thereafter applied for his removal from the record which was granted (Doc. No. 217, Transcript January 5/2017). *

*AEO orders cause fundamental concerns regarding the impairment of the attorney's ability to effectively communicate with the client and the client's ability to meaningfully and adequately prepare for trial. This discovery approach is ethically problematic for counsel. The restriction lends itself to abuse. *Fears v. Wilhelmina*, No. 02 Civ. 4911, 2003 WL 21737808 at *1 (S.D.N.Y. July 25, 2003). An AEO order by its very nature turns counsel into a keeper of secrets from the client a fundamental and unethically uncomfortable role for counsel most of whom, if not all, will refuse to continue to act for a party under this prohibitive cloud which dictates that counsel will be unable to have the benefit of his own client's input arising from vital evidence.

At the December 15, 2016 hearing (Doc. No. 187) the Judge heard two continuing misrepresentations and falsehoods from debtor again from counsel table and NOT evidence when Creditor again raised AEO issue (Transcript: 13:16-25; 14:1-7):

---

"MR. DAL LAGO (Creditor Counsel):  But I don't know what the grounds -- I never knew what the grounds were for it.
THE COURT: Well, the grounds were that the
*qui tam* actions were -- you know, are top secret, confidential anyway, and nobody knows who they are or what they are or who the parties are. That was the one -- that was the one ground.
  MR. DAL LAGO:  But if I may, Your Honor, the --
  MR. HOLLANDER:  We were also afraid of interference --          MR. HOLLANDER:  -- which has occurred in the past. I don't really want to argue this, this way.
  MR. DAL LAGO:  Okay.  That needs to stop because that's a lie.
  THE COURT:  Right, then I --
  MR. HOLLANDER:  If he wants --
  MR. DAL LAGO:  That's not true."

Creditor thereafter made multiple applications to the Judge to remove and rescind the AEO order to no avail, the Judge failing to provide a grounds or reasons for its original issuance or continuing it.  At subsequent hearing the Judge asked debtor counsel to remind her why she issued the order to which debtor counsel again misrepresented in the form of "evidence from counsel table" repeating the lie that Creditor had contacted debtor clients and stating a complete falsehood that one file (qui tam) was subject to a U.S. Justice "gag order". In fact, that action had been made public a full year before. For again unknown reasons Judge accepted this "evidence" from debtor counsel table which was subsequently refute by Creditor's subsequent filing with the court the publicly circulated settlement agreement from the year before regarding the supposed confidential "secret" qui tam action (Doc. No. 231-Exhibit 1). Yet Judge refused to rescind her onerous AEO order despite proof that any semblance of any "evidence" upon which she apparently based her order was proven to be untrue.

In the January 5, 2017 hearing Creditor pro se raised the AEO issue again (Doc. No. 217 transcript at 12:22-25; 13: 1-16):

---

"MR. STEVEN YORMAK:  All right, good.  First of all, there's the matter of procedurally now, with the "attorneys eyes only" order, I'm being left out of discovery, which I know it should not continue."

"And I should clear the record so you're aware. Mr. Hollander, on a couple of occasions, has indicated there's some sort of gag order, as it were, as to the DOJ regarding the *qui tam* matter. That's not correct. He has not given you the correct information. In fact, it's public. And that matter has been disclosed. In fact, there's an SEC Form 8K—"

(15:9-25)
"MR.   STEVEN   YORMAK:   I   appreciate   it.   First of all, the *qui tam* is not confidential. The *quit tam* settlement is a 67-page document that was published January 2016, so it's been a long time that it's been in the public domain. So that seemed to be the only basis for your "attorneys eyes only."

Mr. Hollander -- and I have reviewed the transcript from December previously -- seemed to suggest that there was some client contact, and tried to give you evidence of some sort in standing and giving argument. That's not correct.

There's been no contact with Ben Yormak's clients whatsoever since 2012. And there's been no basis for an "attorney eyes only" order because there's no affidavit material before you. There's no evidence, and the information you were given regarding *qui tam* is public information and you were misled, with all due respect to

   (Contd pg. 16:1-19)
   all concerned.
   My position is that the order was not correct in
   its first instance, and it shouldn't be up to me to have to bring a motion, particularly now that we have a circumstance of I am my own attorney.  And I was hopeful that you would reconsider of your own volition.  That's my position. "

 Then the Judge was obviously aware of the continuing court prohibitory discovery

 orders yet stated: (18:5-9):

_____

"THE COURT:  Well, if you looked at the order scheduling trial, there's disclosures that are directed to be made within a certain time period.  And that's what the discovery process is for.  So you'll find out what their case in the process of discovery.  All right?"

 By January 5, 2017 Creditor through previous counsel and as *pro se* had made

three (3) applications to court to lift the onerous AEO order by that date which the court

refused. The judge thereafter again refused to deal with this issue even after Creditor

bringing the requested motion dated February 4, 2017 (Doc. No.231).

 At no time did debtor EVER file or document ANY instance of Creditor

contacting debtor clients despite the fact he had ample opportunities to do so including

his own filing (Doc. No. 362).  The debtor attempted to malign and smear the Creditor

being careful never to actually put it in as evidence for fear it would be perjury.  In one

instance debtor accused the Creditor of "threats" against a third party co-counsel of his

which was patently untrue and clearly refuted by sworn affidavit of co-counsel (See affidavit of Duane Morris, Michael Mustikoff: "That statement is incorrect as set forth. Steven Yormak made me aware of the dispute…there were no threats.")

The Judge never had ANY grounds for any discovery prohibition based on the record or the facts, let alone the law.

At no time did the Judge ever provide grounds for the continuing onerous AEO order which worked as a total discovery prohibition, the unrepresented Creditor having no "attorney" to receive "Attorney Eyes Only" discovery.

**There is no case precedent in any court, federal or otherwise, for a court to entirely prohibit discovery to a pro se party through the mechanism of an "Attorney Eyes Only" order when a party does not have an attorney. No attorney no discovery.**

As a direct result of the Judge unprecedented and unsupportable AEO order and total prohibition from Creditor contacting debtor clients as witnesses to the UPL accusation made by debtor, the Creditor was unable to find competent counsel to represent him thereafter and remains self-represented.  This judge has created an extraordinary circumstance with no apparent basis and NEVER provided its rationale not only for the original AEO order but maintaining for almost two years.

With these orders (AEO and no client contact) for unknown reasons has tied the Creditor's hands behind his back stopping him from prosecuting his case which now included criminal accusations against him which this judge allowed years after litigation had commenced.  This continued for approximately two years during which time the Creditor was stopped from doing required investigation to prepare his defense to debtor

criminal accusations with no discovery, particularly alarming given the debtor's abuse which is the subject tow pending motions, one by the Trustee and one by the Creditor. The Judge has stopped the Creditor in his tracks on every level without any justification. (See March 2, 2017 Transcript- Doc. No. 287, pg 28).

In fact, the Judge stated that she was never under the "impression" Creditor had ever contacted debtor clients (Doc. No. 287 transcript March 2, 2017, pg. 30:24-5) yet continued the AEO order and no client contact order having been provided with contrary documentation by Creditor. The Judge again refused to lift the unsupported draconian orders instead stating she would "revisit" the orders just as she had stated in November, 2016 which she failed to do (Doc. No. 275). In fact the Judge then required a further motion from Creditor regarding AEO and non-contact with clients despite the previous motion (Doc. 231) at the October 18/2017 hearing (Doc. No. 354 at 13:3-10; 14:18-25):

---

"THE COURT: I made a ruling. I said that I was deferring consideration of certain aspects of the motion until after the appeal was concluded. So I'm done with that motion, so I'm not setting a hearing on that motion.

If you'd like to file a new motion, if you think you need additional relief, then you file a new motion.

Pg. 14:18-25

And then the last is: Motion to rescind oral court order prohibiting Creditor from any contact with prepetition Debtor clients. I think I did make that statement at a hearing --

MR. STEVEN YORMAK: Yes.

THE COURT: I don't know if it's memorialized at an order or not. If you want relief from this Court --

MR. STEVEN YORMAK: I do.

(Pg. 20: 1-23)

I am particularly disturbed by the two orders that are outstanding, and that's why I brought it back up. Your order -- I have it here -- the *sua sponte* AEO, attorney's eyes only – "

"MR. STEVEN YORMAK:  All I really wanted the Court to do was to order a briefing, because it's never been briefed.  The AEO order came out of nowhere, and remains that way –

THE COURT:  All right.

MR. STEVEN YORMAK:  -- and seriously prejudices this Creditor, who can't even investigate.

THE COURT:  File a motion."

MR. STEVEN YORMAK:  And, of course, the same applies for the clients, as you indicated, a prohibition against talking to clients takes away the Creditor's entire rights.

THE COURT:  File a motion.

Pg. 30:19-24

MR. STEVEN YORMAK: And, Your Honor, just so -- I try not to surprise the Court. I will bring the motion for *sua sponte*, attorney's eyes only, and the no contact with clients, because that's extreme prejudice to a Creditor who can't investigate his claim.

THE COURT:  Okay.  All right. "

(24:21-15)

"MR. STEVEN YORMAK:  But I don't like it because what's happened is I can't investigate it, and as the years roll by, these clients are going to be dispersed who knows where.  I can't even -- because of your discovery orders, I can't even get last known addresses.  He's refused to give

(Contd pg.25:1-2)

that.  So my investigation is at a standstill on any number of fronts.

Pg. 25:5-125

MR.STEVEN YORMAK:  I need to investigate -- if the UPL is not disposed of -- and I was hoping it would be disposed of today so I wouldn't be arguing this, but it is what it is.

I need to find out from these clients, did they have anything to do with me? Do they have any evidence to offer, positive or negative, about UPL?  Because I have no details, I have no specifics.  Granted, you've ordered particulars, and maybe we'll actually get to who, what, where, when and how, then I can start to cull down my discovery requests.

THE COURT:  Okay

MR. STEVEN YORMAK:  But as it is now --

THE COURT:  So you're saying you would want to investigate from Benjamin Yormak's client -- investigate or ask either through interroga -- you know, through discovery –

MR. STEVEN YORMAK:  Of some sort.

THE COURT:  -- directed to Benjamin Yormak's clients, asking them, "Were you practicing law without a license?"

(Contd pg. 26:1-22)

24

MR. STEVEN YORMAK:  That's the nub of it.  And I could get into specifics. And if their answer is, "No, I don't even know who you are," that's an answer, and I can use that in my defense.  To deny me that is absurd, in my view.

And, yes, it involves all his clients, but if he will stipulate -- which I've asked Mr. Hollander, which they've refused -- stipulate that all these other clients, other than the five they've named, and I'll get that to that in a second, the witness list -- stipulate that they have not a scintilla of evidence to support their objection that there was any UPL, I can take a fresh look at that then, because I could present that to the Court and say, "Well, we know from what the stipulation is, 95 of the clients have no support whatsoever for their claim."  So that's a start. They've refused that.

So until we get further ahead and get actual particulars and/or we get a stipulation, I'm put in a position of fighting an entire practice.  I don't know where it's coming from, I have no -- he's just made it up, frankly, but that doesn't mean I can't -- I have to respond to it, of course.

Pg. 27:1-25

And my frustration is:  I've already lost documents in the ensuing five years, I've made this Court aware of that. My previous counsel did not -- on every one of my filings, I've made this Court aware, I'm missing documents because of relocations --

THE COURT:  And these are documents that would prove that you were not engaged in the unlicensed practice of law?

MR. STEVEN YORMAK:  Correct.  I can only get anything on my computer, which I'm not very computer literate.

THE COURT:  Uh-huh."

MR. YORMAK Continuing:

"Once the Debtor puts forward a list of five client

(contd pg. 28:1-5)

witnesses, he's opened up that basket.  He can't just pick and choose, "These are my favorite five.  Oh, and these other 95 would not help me at all, so I'm not allowing Mr. Yormak, Sr. to talk to them at all."  That's absurd.  I've never heard of that…

pg. 29:14-25

But not having the ability to go to the 95, that is -- it's just unthinkable in my view, especially when you're dealing with a criminal charge.  This makes it even more extreme.  This is not just me defending myself civilly; this is a horrible charge that he's created.  I have to have the ability to defend myself, and this has been denied by this Court so far, and that's really my position.

As far as the witnesses are concerned, I have to have total access to them.  I mean, to say that I can't have access to the Debtor's clients, that's like saying I can't prepare my case.  Forget discovery.  That's important and I want that, of course, but I have to have the ability to call …

Pg. 30: 1-9

Any lawyer would have that ability.  Any lawyer,

25

any time.  I can't imagine any case that I've ever done for the last 35 years that I
was barred from doing an investigation, whether through me or my investigator.
That's the situation I'm being put in now.  And I don't know why.
    This Court's never given a reason that I'm aware of.  Never.

16-17

    MR. STEVEN YORMAK:  If you would lift the AEO order, that would at least
be a start.

Pg. 31: 15-16

    The AEO, do you really want me to refile?  I'll just refile the same motion you
just struck.

Pg. 32: 12-15

    MR. STEVEN YORMAK:  No, no.  I'm talking about the AEO order from
November 7th.  So you were going to hear that.
    THE COURT: The AEO order. Yes, that's correct."

The Creditor again attempted to lift the AEO order and non-contact order

more than a year later the orders having remained in place despite the ongoing

multiple Creditor applications.

This Judge again demonstrated her bias minimizing the enormity of the effect of

her discovery prohibitions against the Creditor' in its November 14, 2017 hearing (Doc.

No. 359) first questioning if she ever made the original AEO order then denying the fact

that she had not given reasons, written or oral, for her draconian discovery and other orders.

Then refusing to acknowledge whatever "facts" she relied upon in the original AEO order

were clearly debunked leaving her original order without any support or rationale (Doc.

No 186, Nov. 10, 2016 transcript; Doc. No. 187 December 15, 2016 transcript; Doc. No.

359, November 14, 2017 transcript).

At the January 31, 2018 hearing (Doc. No. 390), the Creditor again raised the same

issues which discovery prohibitions had become all the more egregious given the Judge

refusing to require the debtor to particularize his UPL allegations. The Judge having agreed

to order a more definite statement negated whatever benefit this might have had to mitigate

the ongoing discovery and other issues by permitting the debtor to re-file "non-particulars" which had been considered inadequate previously by the Judge putting Creditor back in the "dark". At the January 31, 2018 hearing transcript at 50:3-11 (Doc. No 390):

---

"MR. STEVEN YORMAK:  Yes.  It says you're not supposed to use discovery instead of pleading.  The idea of pleading is to narrow things down so you don't have interminable discovery.  That's exactly what we're on the cusp of.

I don't want to have to go chasing down 95 of his clients.  That's the last thing in the world I want to do. But as it is now, he's leaving me no choice.

I have nothing more today than we had last time, in November, or a year ago.  We need to have some sort of pleadings."

At 50:20-25:

"THE COURT:  And is what you're saying -- let me ask you this.  Is what you're saying, just as if you were being prosecuted for the unlicensed practice of law, you're saying the prosecutor would have to identify what specific actions and what specific clients and put you on notice so that you on notice so that you could defend yourself?

Pg. 51:1-25

MR. STEVEN YORMAK:  Without a doubt.

THE COURT:  And so you're saying:  All right, this might not be fraud but this is -- you know, in the context of a civil dispute, this is alleged criminal activity and I'm entitled to that same information at the pleading level.

MR. STEVEN YORMAK: And there's a concrete reason for that. There's a risk involved for me personally. If I'm not afforded the full rights of discovery in defending myself, there may be a finding adverse to me, which could be used as *res judicata* or issue preclusion. And, boy, am I sunk then. What am I supposed to do then? I was never afforded the opportunity to defend myself because I didn't know where they were coming from. "

PG. 63: 5-18

If this was a situation where I could find it in some way with other witnesses or whoever, okay.  But this Court blocked me from that.  And there's no question, you've blocked me.  I can't contact the clients, I can't do discovery, I have an Attorney Eyes Only order against me. You're saying, for example, which is totally -- in my respectful opinion -- totally contradictory.

You're saying, "Well, Mr. Yormak, how are you prejudiced?  You can just go to discovery."  There's only one thing, Your Honor.  You're not giving me discovery.  And you're kind of reversing it backwards.  I have to come to you to say, "Here's what I need," but I don't know what I need exactly.  He's got all the information.  There are memos in the file that I may have done."

The Judge further stated in the hearing addressing her "difficulty" recalling

her draconian orders but seem to satisfy herself:

PG. 74: 10-23

     THE COURT:  Right, and I'm looking at Docket No. 180, page 2.  It says, "It is further ordered that unless and until the Court enters an order otherwise, any and all information and/or documentation that is produced by the Debtor regarding the identification of his clients and claim/case information that would not be otherwise publicly available shall be kept confidential and at this time shall not be disclosed to any individual or entity except the Trustee and attorneys of record for the Debtor and Steven Yormak."

     MR. STEVEN YORMAK:  Right.

     THE COURT:  That's what you're talking about.

     MR. STEVEN YORMAK:  Right.

     THE COURT:  Okay. "

"Pg. 82:1-25

     MR. STEVEN YORMAK:  I have to tell you, as a decision-maker, I'm not comfortable -- with all respect to you personally as a Bench that I respect, I don't want my future and my family's future, depending whether you might believe him on a certain day.  I don't want that happening when it's a falsehood.  When I know I can prove whatever he says false –

Thereafter the Judge appears to lift the AEO stating the obvious that how can

an AEO order apply when there is no attorney. However, she then confuses the issue,

again, seemingly keeping the AEO order in place for everything except the contested

matter:

At Pg. 109:9-25

     "THE COURT:  I'm just saying my ruling is limited to the contested matter only. "

So the AEO order continued despite repeated attempts to have the orders lifted.

     The Judge discovery and other prohibition are exacerbated by the debtor

misconduct in concealing assets in the millions and other perjury including bankruptcy

Schedules which resulted in the Trustee bringing a Motion for Bad Faith (Doc. No. 153).

So not only is the Creditor blocked from usual and normal discovery and investigation but

the debtor is in violation of bankruptcy and federal obligations of disclosure resulting in an informational black hole for the Creditor created by this Judge.

Further evidence of the Judge demonstrable bias against the Creditor is the blanket denial for ALL Creditor's discovery requests made prior to the AEO order while still represented by counsel.  In fact, the court order not only denied all requests but infused a reverse onus on the Creditor. (Doc. No. 104, 117). The Judge rationale at the time was that she would adopt in toto the discovery orders of the previous District Court.  However, she failed to recognize that not only are bankruptcy proceedings obviously an entirely different process involving debtor assets but as the direct result of her continuing inexplicable permission(s) for debtor to add new defenses (four at last count) that the entire nature of the proceeding just on the issue of liability (proof of claim) was radically changed.

Contrary to discovery rules and the Federal Rules of Civil Procedure Rule 26 Creditor was put and continues in the position of having to guess what documents Debtor and his clients may have.

What exacerbates an already alarming situation in addition to the Judge's across-the-board discovery and investigative prohibitions, was this Judge continually permitting the debtor to file new defenses years after his initial filing to the point of his most recent 2d Amended Objection which included four (4) new defenses including one which had been denied years ago (Doc. No. 398 contradicting Doc. No. 101). This is in spite of the Judge indicating she had missed this.

This pattern of the Judge overturning or being "inconsistent" is a regular occurrence only apparently when it comes to the debtor i.e. Judge previously rejecting new defenses by debtor as being "too late" and noting "pleadings had closed", but then

inexplicably permitting a new UPL defense at same time (Doc. No. 102, May 26/2016 transcript, 19: 12-24, 21:13-14). All the while rejecting the Creditor's motions for summary judgment against debtor based on doctrine of waiver as referred to by Judge (Doc.No.197-transcript of March 24, 2016, 8:6-14, 15:4-7, 37: 1-38).

The Judge has on a number of occasions "forgotten" Creditor motions and motions for summary judgment without setting hearing dates, but never debtor motions. Interestingly the Judge has severely criticized the Creditor for bringing motions to suggest agendas and request setting hearings only to be told in no uncertain terms by the Judge that this is what she does, this despite missing multiple Creditor motions (Doc. No. 303; Doc. No. 309-transcript from June 29, 2017; Doc. No. 270; Doc. No.444-transcript from May 23, 2018).

The Creditor, former consultant to the debtor law firm, is now subject to debtor unwarranted accusations involving alleged direct contact with clients he charges is UPL. Yet Creditor cannot contact these same clients nor have access to their files to be able to defend himself as a result of this ongoing prejudice from the Judge.

To gauge the extent of the Judge bias one only has to examine how she continues her total prohibition in an apparent attempt to protect the debtor while debtor counsel himself a vigorous advocate has offered that of course the Creditor is entitled to contact clients listed on his witness list, a position specifically and significantly NOT adopted by the Judge (Doc. No. 356, paragraph 7). **

Because of the Judge approach Creditor remains blocked from critical relevant debtor client witnesses which will have the obvious result of the debtor being free to "state his version of the facts" to the extreme prejudice to Creditor.

See *In re Gibvo, Inc.,* 185 F.R.D. 296 (D. Colo. 1997).  It is well accepted law that great care must be taken to prevent the unnecessary curtailment of a party's trial preparation: *Farnsworth v Procter & Gamble Co.*, 758 F2d 1545, 1547 (11th Cir. 1985).

The Judge has altered discovery process and the law (any evidence is discoverable which might lead to admissible evidence at trial.)  In the instant case this evidence is not just admissible it is critical and necessary.  Many facts cannot be known to a party prior to discovery, the purpose of discovery being to "discover" facts which may lead to other areas of relevance and interest.  Reversing the law to place the onus on the Creditor to bring motion(s) makes Rule 26 Fed. R. Civ. P.

**This by itself is absurd that the Creditor would only be permitted access to certain client witnesses of debtor choosing and not given access to presumably what would be favorable witnesses . Yet the Judge does not even recognize this. Debtor's own advocate is being "out-advocated" by the Judge.

This is all the more egregious in the instant case where the debtor lawyer "holds all the cards" with total access to his clients and files, none of which the Creditor has.

This debtor taking his 'cue' from the Judge has refused to disclose virtually any discovery to date, itself an abuse being countenanced by the Judge who is actually enabling this conduct by debtor to the extreme prejudice to Creditor. Debtor has refused deposition(s) based on Judge's previous orders (Doc. No. 257).

Judge has on numerous occasions crossed the line and become an advocate for the debtor and his counsel, the most egregious example being her introduction of a pleading which the debtor had not proferred.  Debtor previous objection was on the basis of "fee-splitting" which position is not tenable in the face of *Viles Beckman v. Lagarde* (Case No.

2:05-cv-558-FtM-29SPC (M.D.Fla., Sept. 1, 2006), a decision in the Middle District of Florida, Fort Myers where a non-lawyer contract was upheld as enforceable despite being a fee-splitting agreement with a Florida lawyer.  The Judge being aware of the debtor weak objection framed a brand new objection on her own through her court decision for the debtor ("agreement was unenforceable because it contemplated payment to Creditor for UPL services"), and then allowed this objection to be introduced which remains the main defense for the debtor now. (Doc. No. 90, Exhibit 2(d), 10:25, 11:1-20; Doc. No. 287).

The Judge has continually permitted debtor to circumvent standard procedural rules such as introducing a new pleading through a motion for summary judgment, missing deadlines, filing motions during a time when court had abated all proceedings

*** In almost all instances the Judge has exercised her discretion in favor of the debtor, and never the Creditor.

  ***The Judge actually set a hearing date for this improper motion during the time she had ordered a stay and abatement of all proceedings forcing Creditor to bring a motion.

As recently as May 23, 2018 (Doc. No. 444 transcript) court appearance Judge despite the fact that she was unable to read Creditor's Motion To Dismiss Bankruptcy Proceedings (Doc. No. 422) because motion had just been filed nonetheless stated in open court that the Creditor motion was doomed ("uphill battle") and actually encouraged and suggested to debtor counsel that he knew what to do with a "frivolous motion" regarding Creditor motion to dismiss.  She further went on to say she already agreed with debtor counsel preliminary points without the benefit of a hearing. It would appear again Judge pre-determined approach to Creditor will seal the fate of the Creditor motion without the benefit of a full opportunity for full hearing, Judge already stating debtor

counsel objection(s) are dispositive despite not having the opportunity to read the motion brought pursuant to the abuse section of the code, s 105(a). The Creditor motion makes specific reference to debtor concealment of millions of dollars of contingency assets. (Doc. No. 444-transcript May 23, 2018), concealment of a secret bank account holding unreported $65,000.00 and that debtor was never insolvent all of which is an abuse on grounds for dismissal of his bankruptcy.

**COURT BIAS, PREJUDICE AND LACK OF IMPARTIALITY**

The Creditor brings this motion for recusement and/or disqualification against Judge C. Delano ("Judge") on the basis of bias and prejudice against Creditor pursuant to 28 U.S.C. s. 455(a) and violation of constitutional 'due process' rights including but not limited to evisceration of pre-trial rights summarized as follows:

i) 'Attorney Eyes Only' (AEO) *'sua sponte'* order(s) , unprecedented and unsupported , against the *pro se* Creditor which had the effect against this unrepresented party of a total discovery prohibition there being no 'attorney' to receive any discovery. There were no alleged 'trade secrets' or other confidential information which could not be addressed through a typical confidentiality agreement which had been done in the identical preceding District Court action;

ii) Ongoing and full enjoinment order against the Creditor without any basis in fact or law specifically barring Creditor from any contact with the most relevant witnesses thereby preventing him from garnering critical evidence to defend himself against debtor accusation(s) of unlicensed practice of law (UPL) being a felony in Florida, thereby making Creditor defenseless ( "hands tied behind his back" ), witnesses being debtor former clients being the very subject matter of the UPL charge(s); Judge has blocked Creditor investigation rights and ability to 'meet his case 'in toto' preventing Creditor the ability to mount any defense to debtor criminal accusations . The Judge orders were without any justification by reference to any *evidence* on record and remains so;

iii) An unprecedented and complete block and reversal of discovery procedural rights against Creditor through a blanket denial of ALL Creditor discovery requests which ban continues without the Judge

providing any reason despite Creditor attempts to re-raise issue through multiple motion(s);

iv)  <u>Given the aforementioned the Creditor was forced to represent himself</u>, no competent attorney being willing to act under the circumstances. Creditor attorney at the time of the *'sua sponte'* AEO order resigned as a result this order being unable to competently represent Creditor who had become barred from the litigation process itself for no apparent reason pursuant to AEO order. Judge refused to lift AEO order prior to Creditor attorney removing himself from record. Judge thereafter refused to lift AEO order for over a year after Creditor became unrepresented despite multiple court applications in open court and by motion(s), the Judge refusing to provide any reason, said AEO order only partially lifted;

v)  <u>Judge inexplicably permitted debtor to keep adding new defenses (objections)</u> against Creditor Claim 4-1.  As each defense failed Judge permitted further defenses as recently as May, 2018 (Doc. No. 398) allowing debtor new defenses three (3) years after debtor had filed for bankruptcy in effect "re-starting" these proceedings from 'ground zero' . Judge allowed debtor '2d Amended Objections' which now includes four (4) new defenses, one of which had actually been denied by the same Judge two (2) years previous, said permission being granted without any explanation of any grounds to permit debtor delayed new pleadings years into the litigation.  Judge allowed these pleading amendments despite her previous rulings stated in open court a two (2) years before that attempts by debtor to introduce new defenses would not be permitted and that "pleadings were closed." Yet Judge refused to permit Creditor to file new claims in response to debtor new objections Judge citing Local Rules but failing to note her discretionary authority for a "just" result to permit exceptions pursuant to Local Rule 1;

vi)  <u>Judge has "crossed the line" and become an advocate for the debtor</u> including and particularly Judge's *'sua sponte'* re-framing of debtor defense (objection) introducing a new pleading on debtor's behalf which defense debtor had not raised himself. Judge unilaterally ordered the new "deemed" defense (objection) in her decision to debtor's improperly constituted motion for summary judgment 'sua sponte' (i.e. agreement being unenforceable due to contract being "in contemplation of payment to Creditor for UPL services"). Judge's *'sua sponte'* new debtor defense as noted herein remains the main defense to Creditor claim. In court appearances Judge has advocated on debtor behalf and suggested to debtor counsel "he knows what to do on a frivolous motion" in regard to Creditor

> 'Motion To Dismiss' (Transcript May 23, 2018, Doc. No. 444)
> Judge is not only handcuffing Creditor by blocking pre-trial preparation but
> is actually dictating Creditor case by limiting and/or prohibiting relevant
> witness contact (Transcript Jan. 31/2018-Doc. No. 390) and stating
> witnesses are unnecessary despite the witnesses being the basis and subject
> of the debtor accusations of UPL.

Debtor is a wealthy local attorney who filed for bankruptcy for no other reason other than to avoid payment to Creditor. Debtor in the course of the bankruptcy proceeding has concealed contingent assets totaling up to $25 million which abuse this Judge refuses to recognize and ignores for unknown reasons.

Judge has assisted debtor in his ongoing concealment by total prohibition of Creditor discovery and investigation. The Judge has prejudiced these proceedings against Creditor including the aforementioned pending motion by blocking Creditor discovery regarding debtor eligibility for chapter 7 proceedings and abuse of the bankruptcy system relating to Creditor motion to dismiss which is a threshold issue <u>before</u> issues of proof of claim should be addressed ("horse before the cart").

Creditor has been unable to obtain information and documents regarding debtor eligibility, Judge in effect pre-determining the outcome by handcuffing one side, Creditor is unable to adduce any evidence from any other party on his own behalf.

By unjustifiably and severely "tilting" the process in favor of debtor to the extreme prejudice of Creditor it is obvious to any observer that this Judge has pre-determined the end result and has and will continue to manipulate fundamental pre-trial rights against the Creditor thereby demonstrating her bias, so that an "impartial observer would have significant doubts regarding this Judge's ability to be impartial" in any ongoing proceedings particularly at trial.

Judge bias is so egregious that she has permitted debtor to file new Defenses (objections) three (3) years after his initial bankruptcy filing including a new unsupported allegation that Creditor became a "partner" in debtor law firm, and despite there being no evidence of this of this, Judge in open court appears to have accepted this as a "fact" referring to Creditor as "practicing...with debtor". (Transcript Jan. 31, 2018, Doc. No. 390, pg.34:12-18) showing her prejudice and pre-determined result.

This motion for recusal is timely coming now at the "re-started" pleading stage of bankruptcy prior to pre-trial and trial proceedings based on new debtor objections. Creditor seeks to avoid the circumstance of appealing a final decision where Creditor may be criticized for merely being dissatisfied with the result particularly when Creditor was aware prior to this of Judge bias and lack of impartiality. This is in addition to the obvious potential significant waste of judicial resources and parties' expense.

This Judge has permitted this bankruptcy proceeding to become a criminal trial and refuse to provide Creditor with basic criminal safeguards including a jury trial. This Judge has become judge, jury and debtor advocate while dictating and controlling Creditor defense or lack thereof. Judge appears to have no understanding or appreciation that this proceeding is a criminal matter (felony) which can carry with it risk of fines and jail pursuant to the state statute. The Judge has little if any criminal judicial background yet insists, contrary to prevailing case

law to retain jurisdiction over UPL leading one to question if this is to ensure a certain outcome to the Creditor prejudice the Judge refusing to leave the issue to another decision maker, the Florida Supreme Court. (Florida Bar) pursuant to case precedent.

Proceedings before this Judge are clearly tainted and will remain so in any ongoing future proceedings based on the aforementioned. As such the Judge and proceedings will remain suspect to any informed impartial observer particularly in regard to this Judge's approach and decisions which have uniformly NOT been based on any evidence on record.

The Judge has demonstrated her ongoing inability to ensure Creditor's fundamental rights and fairness requirements in violation of the federal statute and Constitution which <u>Creditor is entitled to as a U.S. citizen</u>. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The Judge has disregarded the principles of law and justice merely giving the impression of a fair hearing(s).

Dated: September 14, 2018                                All of Which is Respectfully submitted,

*/s/ Steven R. Yormak*
Steven R. Yormak/Creditor
195 Dufferin Ave. 620
London, ON N6A 1K7
Telephone:  519-495-2050
Email: yormaklaw@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that a true and correct copy of the foregoing was served on September 14 , 2018 electronically and by pre-paid First Class mail including: **Attorneys for the Debtor, Richard J. Hollander, Esq. and Edward R. Miller, Esq**., Miller and Hollander, 2430 Shadowlawn Drive, Suite 18, Naples, FL 34112; **U.S. Trustee**, 501 E. Polk Street, Suite 1200, Tampa, FL 33602; Email: millerandhollander@comcast.net and millerandhollander@comcast.net; **Benjamin E. Lambers, Esq**., Attorney for U.S. Trustee, Timberlake Annex, 501 E. Polk Street, Suite 1200, Tampa, FL 33602, Email: Ben.E.Lambers@usdoj.gov; and **Robert E. Tardif, Jr. Attorney for Trustee,** Post Office Box 2140, Fort Myers, FL 33902, Email: rtardif@comcast.net

*/s/ Steven R. Yormak*
Steven R. Yormak/Creditor
195 Dufferin Ave. 620
London, ON N6A 1K7
Telephone:  519-495-2050
Email: yormaklaw@aol.com

38